Andrea D. Coit, OSB #002640
acoit@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:   (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Defendant Jody N. Cline

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PAUL KWAKE, an individual, DANIEL CAMPBELL, an individual, DOROTHY HAWLEY, an individual, and GARY ROMINE, an individual,<br><br>    Plaintiffs,<br><br>    vs.<br><br>FARIBORZ PAKSERESHT, in his official capacity as Director of Human Services, State of Oregon; and ASHLEY CARSON-COTTINGHAM, in her capacity as Director of Office of Aging and People with Disabilities, a division within the state Department of Human Services, State of Oregon; and JODY N. CLINE, in her capacity as Director of Senior and Disability Services, a division within the Lane Council of Governments,<br><br>    Defendants. | Case No. 6:18-cv-603-JR<br><br>**DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

**LR 7-1(A) CERTIFICATION**

The undersigned certifies that she has discussed the issues raised in this motion by telephone and by email with Plaintiff Kwake, who purports to be acting on behalf of all Plaintiffs. The parties have been unable to resolve the issues discussed in this motion.

**PAGE 1 –**  **DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**

## MOTION TO DISMISS

Defendant Jody Cline, sued here in her official capacity as the Director of Senior and Disability Services for Lane Council of Governments, moves for dismissal of the claims asserted against her in Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). Plaintiffs have failed to state a claim for relief against Cline under 42 U.S.C. § 1983, Title II of the ADA, or the Rehabilitation Act. Further, Plaintiffs do not seek any remedy that Cline, in her official capacity, can provide.

This motion is supported by the following memorandum of law and argument and the pleadings on file herein. Cline also incorporates and joins, to the extent applicable, the legal arguments set forth by the state defendants in their Response to Plaintiffs' Motion for Preliminary Injunction, Document Number 22.

## APPLICABLE LAW

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, to be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court need not, however, credit the plaintiffs' legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Introduction

Plaintiffs complain that they have been arbitrarily denied government benefits, specifically "exception" payments, without due process and in violation of the Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* They seek an injunction against all defendants prohibiting future denials of their applications for exception payments, and an order restoring past benefits. Defendant Jody Cline appears herein seeking a dismissal of the claims against her because she, in her official capacity as an employee of Lane Council of Governments (LCOG), cannot accomplish those ends, even if ordered to do so. Approval and denial of exception payments is within the exclusive control of the State of Oregon.

In the Amended Complaint, Plaintiff Kwake has added a request for injunctive relief against Cline that would prohibit her (LCOG) from assigning two of LCOG's employees to cases involving seniors or disabled adults who reside in Kwake's adult foster homes. Kwake asserts this claim on his own behalf, claiming the two identified employees are biased against him. Cline seeks dismissal of that prayer for relief because none of the claims asserted against her could support such an order enjoining the complained of conduct.

### 2. Material Facts and Law

The Oregon Legislature has enacted legislation announcing a statewide policy: "in keeping with the traditional concept of the inherent dignity of the individual in our democratic

PAGE 3 –   DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
             AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)

society, the older citizens of this state are entitled to enjoy their later years in health, honor and dignity, and citizens with disabilities are entitled to live lives of maximum freedom and independence." ORS 410.010. In furtherance of that policy, the legislature has tasked the Oregon State Department of Health and Human Services (DHS) with the obligation to ensure comprehensive care and assistance to its senior and disabled population through federal and state funding of programs that meet these populations' needs. ORS 410.020, *et seq*. This program is generally referred to in both Chapter 410 and throughout this motion as Senior and Disabled Services (SDS). DHS's implementation regulations for SDS are found in OAR Chapter 411. See ORS 410.070(k) (rule making authority).

Chapter 410 directs DHS to partner with local governments and agencies through inter-governmental agreements to facilitate SDS programs at the local level. See ORS 410.050. The partnered local government or agency is referred to as the "Area Agency on Aging (AAA)". An AAA is defined in OAR 411-015-0005(6) as "the Department designated agency charged with the responsibility to provide a comprehensive and coordinated system of services to older adults and adults with disabilities in a planning and service area."

Lane Council of Governments (LCOG) is a voluntary association of local governments in Lane County, Oregon. http://www.lcog.org/101/About-Us. LCOG's Senior and Disability Services division serves as DHS's AAA to facilitate SDS programs in Lane County. Defendant Cline is the Director of LCOG's SDS program.

In its role as the DHS's AAA for Lane County, LCOG assists DHS in carrying out its statutory mandate to provide comprehensive assistance to the elder and disabled population of Lane County. LCOG remains, however, only a coordinator and facilitator of the State's programs. As explained below, it has no statutory authority to act independently to make monetary assessment awards, to engage in rule making, or to exercise discretion in implementing the rules that DHS has promulgated governing its senior and disabled programs.

PAGE 4 –    DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
            AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)

Plaintiff Kwake runs an adult foster care home that falls under the state's regulatory framework for finding services to disabled adults. Plaintiffs Hawley, Campbell and Romine are disabled adults who live in Plaintiff Kwake's adult foster home. Am. Complaint ¶¶ 9-12. Pursuant to 411-027-0025, DHS provides reimbursement to licensed adult foster home providers for all approved services provided to individuals residing in the licensed provider's adult foster home. The reimbursement rate for these services is uniform and follows a specific payment schedule created by DHS. *See Id.* The services available to a particular adult foster home resident must be determined pursuant to DHS's assessment tool. See OAR 411-015-0008: ("(1) ASSESSMENT... (b) A case manager must conduct an assessment in accordance with the standards of practice established by the Department.") LCOG administers the assessment tool for disabled adults in Lane County, but it has no discretion on how to conduct or evaluate those assessments.

The DHS assessment is referred to as CA/PS. As explained in OAR 411-015-0005 (14), "Client Assessment and Planning System (CA/PS)" means: (a) The single entry data system used for (A) Completing a comprehensive and holistic assessment; (B) Surveying an individual's physical, mental, and social functioning; and (C) Identifying risk factors, individual choices and preferences, and the status of service needs. (b) The CA/PS documents the level of need and calculates the individual's service priority level in accordance with these rules, calculates the service payment rates, and accommodates individual participation in service planning."

DHS has absolute authority to determine how available funds are spent in the SDS programs. See OAR 411-015-0015 ("Current Limitations. (1) The Department has the authority to establish, by administrative rule, service eligibility within which to manage the Department's limited resources."). In the adult foster care program, OAR 411-027-0020 instructs that payment for services is limited to that found to be justified as a result of the outcome of DHS's assessment for the individual SDS participant. Pursuant to OAR 411-027-0025, "The [adult foster care] provider must agree to accept an amount determined pursuant to OAR 461-155-0270 for room

and board and a service payment determined by the Department pursuant to OAR 411-027-0020 or 411-027-0050 as payment in full for all services rendered."

DHS allows for three categories of "add on" rates to the base service payment. Eligibility for "add on" payments for a particular SDS program recipient is also determined through the DHS's CA/PS assessment tool. OAR 411-027-0025. Again, LCOG has no authority to exercise discretion regarding the CA/PS assessment process or its implementation in a given situation. *Id.*

DHS also provides "exception" payments for situations that are not covered by the base service payment or the add-ons. This "exception" payment is at the heart of Plaintiffs' complaint. They claim the defendants, including LCOG, have denied them an exception payment in violation of their constitutional rights. (It should be noted that the exception payments are not, contrary to Plaintiffs' apparent belief, evaluated through application of the CA/PS assessment tool.).

LCOG, as the local administering agency, is powerless to grant or deny an exception payment application. This is made evident in the language of OAR 411-027-0050, titled "Exceptions to Payment Limitations in Home and Community-Based Services." The rule provides: (1) Service payment exceptions <u>may only be granted if the Department determines</u>: (a) The individual has service needs, documented in the service plan, that warrant a service payment exception; and (b) The provider actually provides the exceptional service. *Id.* (underlining added). The rule also explains: "(4) . . . The Department does not authorize additional payment exceptions for building, utilities, food, or regular maintenance. ... (7) All individual exceptions to the assessed service need determination in Adult Foster Homes, Residential Care Facilities, or in-home settings, and renewals of exceptions, must be pre-authorized by the Department's APD Central Office." *Id.* (underlining added).

While LCOG and other local AAA's do play a role in the exception payment application process, that role is limited to review and recommendation. OAR 411-027-0050 (7) states that: "(b) The Department and AAA local office [*e.g.,* LCOG] staff shall review and approve requests

for payment exception before they are transmitted to the Department's APD Central Office. (c) Locally approved requests for payment exception must be sent to the Department's APD Central Office. The request must include: (A) A statement of individual needs that exceed the assessed rate or the maximum monthly hours of services; and (B) A statement of how the individual's needs are met and the cost involved in meeting the individual's needs. (d) <u>The Department's APD Central Office must review and approve exception requests and transmit the decision and effective date to the Department and AAA local office staff. Approval will only be granted if the exception meets an unmet need and is reasonable to meet that unmet need.</u> *Id.* (underlining added).

With respect to notice of a denial, the rule provides that "(e) The Department or the Department's Central Office may deny exception requests. A notice of planned action is required if the individual or their representative requested the exception." *Id.*

"Notice of Planned Action" as used in OAR Chapter 411 is a term of art, referring to the notice provided for in OAR 411-318. See OAR 411-318-0000 "Statement of Purpose and Scope. (1) The rules in OAR chapter 411, division 318 prescribe: …(c) The requirements for notification in the event a developmental disabilities service is denied, reduced, suspended, or terminated and the contested case hearing process for challenging a denial, reduction, suspension, or termination of a developmental disabilities service …." A Notification of Planned Action is required when "(1) An individual and the representative of the individual must receive a written Notification of Planned Action in the event that a developmental disability service is denied, reduced, suspended, or terminated." OAR 411-318-0020. Further, "The Notification of Planned Action must be on the form prescribed by the Department (SDS 0947)." *Id.* In other words, the AAA, including LCOG, has no discretion regarding the form of notice or its content upon a denial of an exception request. DHS has proscribed the form to use.

PAGE 7 –    DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
            AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)

3.   **Plaintiffs' Cannot Obtain Relief from Cline**

Cline is sued in her official capacity, only, as a representative of LCOG. Am. Complaint ¶ 15. Each prayer for declaratory and injunctive relief, save the one that was added to the Amended Complaint and is discussed further below, seeks redress for conduct that lies within the State of Oregon's exclusive control.

   a.   **Request to Declare and Enjoin State Action Regarding Exception Payments**

In the Amended Complaint, Plaintiffs seek:

> "1. That the court declare that the protocols used for assessing individual needs and the use of a secret algorithm to calculate benefits violate the Due Process Clause ...." Complaint at Prayer (1).

As explained above, DHS has mandated in OAR 411-015-0005(14) that SDS program participants be evaluated used the CA/PS assessment tool. LCOG is allowed only to implement that tool. Any declaration made to the effect requested will have no effect as it relates to LCOG and its performance of its role as an AAA for Lane County.

> "2. [D]eclaring that current practices regarding the exceptions process and the administrative hearing process means of providing notice of reduction, suspension, denial or termination of services violates the Due Process Clause." Complaint at Prayer (2).

Again, such a declaration has no impact on LGOC. DHS has promulgated the rule setting forth how one is to receive notice of a reduction, suspension, denial or termination of services. If the rule violates due process, the state must answer for that flaw.

> "3. [I]mmediately enjoining the reduction of in-home care hours for the named plaintiffs and those similarly situated and order defendants to restore the level of service to at least that afforded as of December 31, 2017." Complaint at Prayer (3).

The "reduction" in hours complained of in the complaint is attributed exclusively to the denial of previously approved exceptions. See Complaint ¶¶ 30-33; 38-41. DHS's Central APD office has sole authority to grant or deny exceptions. See OAR 411-027-0050(7). Both

Plaintiffs and the State Defendants acknowledge that the state made those decisions here. *See e.g.,* Am. Complaint ¶¶ 89, 90; State's Response to Motion to Preliminary Injunction, Document Number 22, at page 6 ("The Department denied the exceptions request because Mr. Kwake failed to demonstrate that Mr. Romine required one-on-one assistance, or that such services were being provided to him."). An injunction prohibiting Cline from reducing Plaintiffs' care hours would be meaningless.

> "4. [O]rdering DHS to rescind any current notices of reduction, denial, or termination of benefits to RV and GR receiving in-home care and supports and to restore prospectively the prior level of benefit as of December 31, 2017 or grant the level of benefit sought, whichever is greater." Complaint at Prayer (4).

LCOG cannot accomplish the tasks requested by Plaintiffs. The statutory authority to grant benefits and authorize payment lies exclusively with DHS. Plaintiffs affirmatively assert this in the Amended Complaint: "The Department's APD Central Office must review and approve exception requests and transmit the decision and effective date to the Department and AAA local staff [LCOG]"; "the Department's Central Office may deny exception requests." Am. Complaint ¶¶ 89-90.

> "5. [O]rdering DHS to halt future reductions, denials and termination of benefits for RV and GR receiving in-home care and supports until the court approves a plan that meets the following criteria ...." Am. Complaint at Prayer (5).

Such an order would have no impact on LCOG's future conduct. LCOG cannot reduce, deny or terminate benefits.

### b. Request for Injunction Pertaining to LCOG's Staffing Decisions

Plaintiffs' sixth prayer for relief seeks an injunction "ordering LCOG to remove Marcy Yarborogh and Jordan Crowder, LCOG employees, from any further role involving any residents of Paul Kwake's adult foster care homes." Am. Complaint at Prayer (6). Plaintiffs have not asserted a claim for relief against Cline in her official capacity that would support, or could result in, such an order.

PAGE 9 –   DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
           AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)

Plaintiffs' Amended Complaint asserts various factual allegations regarding the conduct of LCOG employees Jordan Crowder and Marcie Yarborogh. See Am. Complaint ¶¶ 25-28, 64. In sum, Plaintiff Kwake complains that he believes LCOG employees Crowder and Yarborogh are "biased against himself due to previous interactions." Kwake asserts he requested that LCOG not allow these two employees to perform reassessments on residents of his foster care home in the future, but his request was denied. *Id.*, ¶ 27, 28. None of the other Plaintiffs allege any misconduct directed at them by Crowder or Yarborogh, or harm resulting from these two employees' conduct.

In amending the complaint, Plaintiffs did not add any new claims for relief based on the new allegations against Crowder and Yarborogh, or a claim against Cline in her official capacity that could give rise to injunctive relief based on the conduct of Crowder or Yarborogh. Rather, the claims remain consistent with those asserted in the original Complaint, alleging violations of constitutional and statutory rights resulting from the denial of Plaintiffs' exception applications. None of those claims could result in an injunction prohibiting Cline from staffing Kwake's foster homes with Crowder or Yarborogh.

### 4. Plaintiffs Have Not Stated Substantive Claims for Declaratory Relief Against Cline

Plaintiff's first claim for relief is for declaratory judgment, asking for a declaration that Cline, in her official capacity, has violated Plaintiffs' legally protected rights. Plaintiffs allege various theories supporting their rights to declaratory relief. None are successfully pled.

#### a. Plaintiffs Have Failed to State a 42 U.S.C. § 1983 Claim Against Cline

Plaintiffs assert four "counts" against Cline under 42 U.S.C. § 1983, alleging the violation of various constitutional rights. See Am. Complaint, First Claim for Relief, Counts 1, 2, 3, 4, 7. As noted above, Cline is sued in her official capacity, "as Director of Senior and Disability Services." Am. Complaint ¶ 15. Effectively, the claim against Cline is a claim against LCOG. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-92 (1978). The Supreme Court has stated: "Personal-capacity suits seek to impose personal liability

upon a government official for actions he takes under color of state law. ... Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id,* 436 U.S. at 690 n.55. To establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). By contrast, an official capacity suit, consistent with a claim against the public entity, requires proof that a policy or custom of the governmental entity was the moving force behind the violation of federal law. *Id.*

Plaintiffs do not assert any facts that could give rise to municipal liability for purposes of a 42 U.S.C. § 1983 action. In their effort to hold Cline/LCOG responsible for injunctive relief under § 1983, they allege only the discrete acts of two relatively low level employees. Plaintiffs make no allegation that the employees were acting in furtherance of LCOG's custom or policy or that either of the named employees were final decision makers for LCOG. Cline, presumed here to be the final decision maker for LCOG's SDS program, is not alleged to have taken any conduct that is at issue in this lawsuit.

Plaintiffs have failed to state a claim for municipal liability against Cline in her official capacity.

   b. **Plaintiffs Fail to Assert ADA and Rehabilitation Act Claims Against Cline**

Plaintiffs' Count Five asserts a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. In support of that claim, Plaintiffs allege that "cuts to home and community based services (in-home care services) by a state social service agency that exacerbate the risk of isolation and segregation for the elderly and/or people with disabilities violates the Americans with Disabilities Act." Am. Complaint ¶ 125.

Plaintiff's Count Six asserts a claim arising under the Rehabilitation Act, 29 U.S.C. 794, Section 504. The precursor to the ADA, the Rehabilitation Act prohibits discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal

contractors. Section 504 states that no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under any program or activity that either receives Federal financial assistance or is conducted by any Executive agency or the United States Postal Service. *Id.*

Plaintiffs claim the defendants have violated the Rehabilitation Act by "limiting in-home services" and failing to provide the "most integrated services" in the "most integrated setting." Am. Complaint ¶¶ 133-135.

Again, the alleged violations of the ADA and the Rehabilitation Act are exclusively attributed to the denial of Plaintiffs' applications for exceptions funding. See e.g., Am. Complaint ¶¶ 125, 130-135. Nowhere in the Amended Complaint do Plaintiffs allege that Cline (or LCOG) denied their exceptions. Not only does Cline not have that authority, but the state defendants have affirmatively admitted that the State made the decision to deny the exception applications at issue here. See State Defendants' Response to Motion for Preliminary Injunction, at page 6.

Cline has demonstrated that she has no authority to grant or deny the Plaintiffs' exception applications and that she did not grant or deny the exceptions. Cline cannot be held liable for the alleged consequences flowing from those denials.

## CONCLUSION

Dismissal is appropriate and should be with prejudice. Cline cannot grant the requested relief, no matter how the claims are plead. Further, Cline, in her official capacity, cannot be held responsible to the allegedly wrongful conduct of two individual LCOG employees under the 42 U.S.C. § 1983. She likewise cannot be liable for those employees' actions as it relates to Kwake under either the ADA or the Rehabilitation Act. As explained in the State's Response to Motion for Preliminary Injunction, Kwake is not a qualified individual with a disability. He is not entitled to the protections of those statutes and no amount of re-pleading can cure that defect.

**PAGE 12 –   DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**

Defendant Cline respectfully requests that she be dismissed from this case with prejudice.

DATED this 18th day of May, 2018.

            HUTCHINSON COX

          By:  s/Andrea D. Coit
            Andrea D. Coit, OSB #002640
            Of Attorneys for Defendant Jody N. Cline

PAGE 13 –  DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)

CERTIFICATE OF SERVICE

I certify that on May 18, 2018, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)** on the party or parties listed below as follows:

☑       Via First Class Mail, Postage Prepaid

Paul Kwake
Daniel Campbell
Dorothy Hawley
Gary Romine
1865 17th Street, Apartment C
Springfield, Oregon 97477
Email: paulkwakesr@gmail.com
    Pro Se Plaintiffs

I certify that on May 18, 2018, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)** on the party or parties listed below as follows:

☑       Via CM / ECF Filing

Christina L. Beatty-Walters
tina.beattywalters@doj.state.or.us
Patty Rincon
patty.rincon@dog.state.or.us
Department of Justice
100 SW Market Street
Portland, Oregon 97201
    Of Attorneys for Defendants Pakseresht and Carson-Cottingham

HUTCHINSON COX

By: s/Andrea D. Coit
    Andrea D. Coit, OSB #002640
    Of Attorneys for Defendant Jody N. Cline

**PAGE 14 –   DEFENDANT JODY N. CLINE'S MOTION TO DISMISS FIRST
              AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**