IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL KWAKE, an individual, ROBERT
GEORGE VINDHURST, an individual, and
GOERGE ROMINE, an individual,

Plaintiffs,

v.

FARIBORZ PAKSERESHT, in his official
capacity as Director of Human Services,
State of Oregon; et al.

Defendants.

Case No. 6:18-cv-00603-JR

OPINION AND ORDER

MCSHANE, Judge:

Plaintiffs are three *pro se* individuals, two of whom receive adult foster care services

from the State of Oregon and one of whom (Mr. Kwake) is their adult foster care provider.

Plaintiffs Paul Kwake and Gary Romine move for preliminary injunction requesting additional

monthly payment to Mr. Kwake for the services he provides to the two plaintiffs in his care. Pl.'s

Mot., ECF No. 15.

This Court observes that the complaint in this case appears to have been lifted in

substantial part from the complaint in another case, a case which deals with dissimilar issues and

involves a different program run by a different office within Oregon's Department of Human

Services ("Department").[1] The issue raised here by Plaintiffs' motion for preliminary injunction is the monthly fee that Mr. Kwake receives for providing Mr. Romine's care.

Because Plaintiffs have not met their burden of showing a likelihood of success on the merits or a likelihood that they will suffer irreparable harm without immediate relief, Plaintiffs' motion for preliminary injunction (ECF No. 15) is DENIED.

## FACTUAL BACKGROUND

### A. Oregon's Adult foster home program

Oregon's adult foster home program provides necessary care and services to persons 65 years of age and older and to adults with disabilities. *See* OAR 411-050-0600. The program requires participants ("consumers") to receive services 24 hours a day, seven days a week, in a provider's residence and not in the consumer's own home. *See* OAR 411-050-0602(4); Lee Decl. ¶ 4; ECF No. 23. In return the Department provides a flat monthly fee to the adult foster care provider to cover the cost of care for each individual consumer the provider serves. *See* OAR 411-027-0025; Everidge Decl. ¶ 4, ECF No. 24.

The reimbursement amount is set out in a rate schedule that has three categories of rates: (1) base rate, (2) base rate plus add-on(s), and (3) hourly exception rates. Everidge Decl. Ex. 2. All consumers receive, at minimum, the base rate. OAR 411-027-0025(2)(a). A consumer may also be eligible for one or more add-on payments, depending on his or her documented needs. OAR 411-0287-0025(2)(c)(A)-(C) (outlining three different types of add-ons). For every consumer, the Department makes a determination about whether add-on payments are warranted.

---

[1] *C.S. v. Saiki*, 6:17-cv-00564-MC, U.S. District Court, District of Oregon. The fact that the pleadings here were copied directly from an unrelated case is problematic, as it borrows claims of injury alleged to have occurred within another case's unique set of facts. The issue in this case does not concern in-home service hours or the Department's in-home program, as it does in *C.S. v. Saiki*. Rather, the claims here concern the Department's residential program for adult foster care, and the provider's claim for inadequate payment.

*See* OAR 411-027-0025(2)(b). If a consumer is eligible for one or more add-ons, the base plus the number of add-ons is then used to determine the service rate for that consumer. *Id.*; Everidge Decl. ¶ 8.

The third category of rates is the "exception rate," which is considered only when requested by a provider. *See* OAR 411-027-0050(7); Everidge Decl. ¶ 11. If approved by the Department, exceptional payments are calculated at an hourly rate set by the rate schedule. Everidge Decl. Ex. 2. The administrative rules permit the Department to either approve or deny exception requests. OAR 411-027-0050(7)(e).

## B. Plaintiff's exceptions request is denied

In January 2018, Mr. Kwake submitted an exceptions request for Mr. Romine. Everidge Decl. ¶ 18. Mr. Kwake noted in the request that Mr. Romine had "paranoid delusional dementia" and needed one-on-one assistance at night to calm him down. *Id.* To address those alleged needs, Mr. Kwake requested 240 additional service hours per month for Mr. Romine, totaling $3,146.40. *Id.* The Department denied the exceptions request because Mr. Kwake failed to demonstrate that Mr. Romine required one-on-one assistance, or that such services were being provided to him. Everidge Decl. ¶ 19. Mr. Romine's services have not changed and have not been reduced since the Department denied the exceptional rate. *See.* Am. Compl. ¶¶ 18, 23-24.

## LEGAL STANDARD

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a

temporary restraining order are similar to those required for a preliminary injunction. *Lockheed*

*Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The

court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra*

*On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

Plaintiffs' amended complaint present four claims based on alleged violations of: (1)

procedural due process; (2) substantive due process; (3) the Americans with Disabilities Act; and

(4) the Rehabilitation Act.

### A. Procedural due process

Plaintiffs assert that their procedural due process rights have been violated as a result of

the Department's denial of the exceptional payment request. The allegation is that Plaintiffs

received an insufficient notice of the Department's decision and no opportunity to be heard. *See*

Pls.' Mot. ¶¶ 12-17.

As a threshold matter, a plaintiff raising any due process claim must show the existence

of a constitutionally protected property interest. *See Baumann v. Ariz. Dept. of Corrections*, 754

F.2d 841, 843 (9th Cir. 1985) ("The threshold question in due process analysis is whether a

constitutionally protected interest is implicated."). While a person can have a property interest in

continuing to receive government benefits, not all regulations authorizing a government benefit

will create a property interest. *Doyle v. City of Medford*, 606 F.3d 667, 672-73 (9th Cir 2010);

*Bd. Of Regents v. Roth*, 408 U.S. 564, 569-79 (1972) ("The range of interests protected by

procedural due process is not infinite.") A property interests exists only where a person can

establish "a legitimate claim of entitlement" to the benefit. *Bd. Of Regents*, 408 U.S. at 577. An

entitlement must stem from a source independent of the Constitution, such as state law or agency rules. *Id*. For a regulation to establish a property interest, the regulation must set particularized criteria that constrain the decision maker's discretion. *Doyle*, 606 F.3d at 672-74 (A "regulation granting broad discretion to a decision-maker does not create a property interest.")

Here, Plaintiffs have not identified a source of a property interest to sustain an allegation of procedural due process violation. Payment under the Department's "exceptions" rate category is not an entitlement, because the Department has discretion to grant or deny "exceptions" rate payment. Section (1) of the rule states that an exception "may" be granted if "the individual has service needs, documented in the service plan, that warrant a service payment exception" and "the provider actually provides the exceptional service." OAR 411-027-0050(1); *see also* OAR 411-027-0050(7)(e) ("The Department or the Department's Central Office may deny exception requests.") Because Mr. Kwake has not identified a protected property interest, Plaintiffs have not shown a basis for their claim, let alone a likelihood of success on the merits.

## B. Substantive due process

Plaintiffs' claim on substantial due process is based on the Department's denial of their exceptions rate request. The exceptions rate request was denied, because Mr. Kwake did not provide documentation to establish that he was providing the exceptional services, as required by the exceptions rule. *See* Everidge Decl. ¶ 19. In order to sustain a substantive due process claim, a plaintiff must allege facts demonstrating that the government action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Hoeck v. City of Portland*, 57 F.3d 781, 786 (9th Cir. 1995) *quoting Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Because the Department had a reasonable basis for denying the requested exception, Plaintiffs have not shown a likelihood of success on the merits.

### C. ADA and Rehabilitation Act

In order to establish a violation of Title II of the ADA and the Rehabilitation Act, a plaintiff must demonstrate as an initial matte that he is "an individual with a disability." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007). Because Mr. Kwake does not allege to be disabled in any way, he is not likely to prevail on his ADA and Rehabilitation Act claims.

As for plaintiff Mr. Romine, in order to prove liability, plaintiffs must prove that a reduction in services occurred as a result of a government decision, as well as a link between the reduction in services and a risk of institutionalization. *See, e.g., G. v. Hawaii*, 676 F.Supp.2d 1046, 1059 (D. Haw. 2009). Because there is no evidence tending to prove either that a reduction in services occurred or a link to a risk of institutionalization, Plaintiffs have not shown a likelihood of success. Indeed, the complaint shows that Mr. Kwake is providing Mr. Romine with the necessary services and that no reduction in services has occurred. Am. Compl. ¶¶ 18, 23-24, ECF No. 19.

### D. Irreparable harm

In order to secure a preliminary injunction, a plaintiff must present proof that he or she will suffer irreparable harm without immediate relief. *Winter*, 555 U.S. at 21-22. It is insufficient to simply allege that irreparable harm is likely without relief: "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunction relief." *Caribbean Marine Services Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Here plaintiffs have not made a showing that they will suffer irreparable harm. There is no allegation that Mr. Romine's care has been or will be reduced or impacted without the exceptions rate payment. The only alleged harm is financial – that Mr. Kwake is currently providing care out of his own pocket.

## CONCLUSION

Because Plaintiffs have not met their burden of showing a likelihood of success on the merits or a likelihood that they will suffer irreparable harm without immediate relief, Plaintiffs' motion for preliminary injunction (ECF No. 15) is DENIED.

IT IS SO ORDERED.

DATED this 31st day of May, 2018.


＿＿＿s/Michael J. McShane＿＿＿＿＿＿
Michael J. McShane
United States District Judge