Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019
Appointed pro bono attorney for plaintiff Daniel Campbell

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DANIEL CAMPBELL, an individual,<br><br>Plaintiffs,<br>v.<br><br>OREGON DEPARTMENT OF HUMAN SERVICES, an Oregon public agency; FARIBORZ PAKSERESHT, in his official capacity as Director of Human Services, State of Oregon; and ASHLEY CARSON-COTTINGHAM, in her official capacity as Director of Office of Aging and People with Disabilities, a division within the state Department of Human Services, State of Oregon,<br><br>Defendants. | Case No. 6:18-cv-00603-MK<br>(Bifurcated Cases)<br><br>**THIRD AMENDED COMPLAINT OF PLAINTIFF DANIEL CAMPBELL** |

## BACKGROUND

1. The fundamental purposes of Oregon's adult foster care program are to "provide needed care and services to thousands of Oregonians who are elderly or have disabilities and who might otherwise be institutionalized," and to compensate providers of such care. ORS 443.720(1)(a). Contrary to its stated purposes, Oregon's adult foster care program regularly fails those participants who have the greatest need and are at the highest risk of institutionalization.

2. The current regulatory scheme requires participants who need the most care—and are therefore often those with the most severe disabilities—to submit annual applications for

payment for the care they require. These regulations, however, provide no standards for entitlement to the payments, leaving recipients uncertain year after year as to whether they will receive payment for the care that they need or instead face potential eviction and institutionalization.

3. The regulations also prevent foster care providers, who are often the only people available to assist severely disabled foster care participants, from applying for these benefits, and the Oregon Department of Human Services ("DHS") regularly fails to provide (1) written notice of its decisions denying such applications or (2) a right to an administrative appeal, even when the foster care participant submits the application themselves.

4. This lawsuit seeks to effect changes in Oregon's foster care regulations so that (1) foster care participants know whether they meet specified criteria for the care they require, and (2) providers can apply for payments on behalf of their tenants and administratively appeal decisions denying those applications. It further seeks a judgment ordering that the plaintiff—a disabled adult foster care participant—is entitled to payment for the care currently being paid for by his provider so that he can remain in the foster care system and avoid the institutionalization that would result if he is unable to receive the care he needs in his current home.

5. DHS administers the adult foster care program and has rulemaking authority in relation to it. DHS also works with other program administrators, such as the Lane Council of Governments, in administering the program.

6. First, the DHS Rule violates the federal Americans with Disabilities Act ("ADA") because it wrongfully prohibits providers from submitting the required annual applications for these exception payments, even though the provider is often the only person involved in the coordination of the care and well-being of the consumer and might be the only person with whom the consumer has a close, family-like relationship. As a result, DHS often considers exception requests from providers but denies them without providing any written notice of the decision or any right of appeal—despite the fact that so long as the consumer is in the provider's



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

care, the provider is required by law to provide for all of the consumer's needs regardless of expense.

7. The DHS Rule impermissibly places on disabled consumers the burden of reapplying each year for exception payments in order to receive any meaningful administrative process, but in practice, Defendants do not provide that process even when applications are made directly by the disabled consumer.

8. The DHS Rule thus violates the ADA, as it utilizes criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, or (b) have the purpose or effect of defeating or substantially impairing accomplishment of the adult foster care program with respect to individuals with disabilities.

9. Second, Defendants' denial of Plaintiff's exception applications violates the "integration mandate" of the ADA and the Rehabilitation Act of 1973. Defendants denied, in full or in part, exception applications from a cognitively-impaired adult foster care consumer, which were submitted both by his providers and later by himself. Even when Plaintiff submitted the exception applications himself, Defendants did not provide Plaintiff with written notice of the decisions denying his applications, any reasoning or justification for the denials, or notice of any right to an administrative appeal.

10. The result of the denials is that Defendants have created a substantial risk that Plaintiff will not be able to remain in his home but will instead require institutionalization. This violates the ADA's requirement that state agencies provide disabled consumers with services in the most integrated setting possible. 28 CFR § 35.130(d).

11. The Court should declare that the DHS Rule violates the ADA, issue a remedial injunction as set forth in the Prayer for Relief below, and direct Defendants to grant Plaintiff's exception applications in full.



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(4) (jurisdiction over claims brought under federal civil rights statutes) and 28 U.S.C. § 2201 (Declaratory Judgments Act). As described below, there exists an actual controversy between Plaintiff and Defendants.

13. This Court has personal jurisdiction as Defendants are either domiciled in the State of Oregon, or comprise Oregon state agencies, and have ongoing, systematic contacts with this forum.

14. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Oregon, Defendants reside in Oregon, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

15. This action has been filed in the Eugene Division pursuant to Local Rule 3-2 because the acts or omissions at issue occurred in Lane County (where the plaintiff resides) and Marion County (where DHS is located).

## PARTIES

16. Paul Kwake, whose claims have been bifurcated from this action, owns two five-bed adult foster homes ("AFH") located in Springfield, Oregon (collectively, the "Home"). Both houses comprising the Home have been operating as adult foster care homes since at least January 23, 2012. DHS has issued Kwake a class 2 license, which may be issued to a provider who has two or more years of experience providing care to adults who are elderly or physically disabled, and who has passed the Department's basic training course for potential AFH licensees. *See* https://ltclicensing.oregon.gov/Home/Classification (accessed June 15, 2019).

17. Plaintiff Daniel Campbell is a resident of the Home and has been since July 2012. He suffers from Parkinson's disease, which has progressed to stage 5 of 5. He is an amputee and requires either a walker or wheelchair, requires assistance for many activities of daily living ("ADLs") and suffers cognitive impairment. He also suffers from episodic delusions in which he



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

carries on conversations with non-existent people or believes he is in different parts of the country. His cognitive abilities and memory likely will continue to degenerate over time. He also suffers from diabetes and stage 4 renal failure. Were he not at the Home, he would need to be institutionalized as he requires significant, full-time professional care.

18. Defendant Oregon Department of Human Services is the Oregon governmental agency responsible for the delivery and administration of Oregon's adult foster care system.

19. Defendant Fariborz Pakseresht is the Director of DHS and has been since September 2017. He is sued herein in his official capacity based on his role in DHS rulemaking and as a final decisionmaker at DHS.

20. Defendant Ashley Carson-Cottingham is the Director of the Office of Aging and People with Disabilities, which directly administers the adult foster care program. She is sued herein in her official capacity.

## GENERAL ALLEGATIONS

### A. Daniel Campbell's Exception Applications.

21. In February 2015, Kwake applied for exception payments, seeking an additional 7 hours of one-on-one care necessitated by Campbell's particular needs. The application was submitted to Senior and Disabled Services, Lane Council of Governments ("SDS/LCOG"). The application was granted. Exception payments ran through March 31, 2016.

22. In March 2016, Kwake again applied for exception payments for 7 hours of one-on-one care needed by Campbell. On or about April 1, 2016, DHS approved the application. Exception payments ran through March 31, 2017.

23. On or about March 1, 2017, in advance of the March 31 exception payment expiration date, Kwake applied once again to SDS/LCOG for exception payments for Campbell. SDS/LCOG advised Kwake that it did not think Campbell needed one-on-one care, and that SDS/LCOG therefore would not forward the exception request to DHS' Office of Aging and People with Disabilities.



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

24. Kwake escalated the matter. He discussed with DHS and the Office of Aging and People with Disabilities the need for exception payments. Eventually, DHS approved the continuance of the exception payment through March 31, 2018.

25. On or about March 16, 2018, Kwake applied for exception payments for Campbell. On April 19, 2018, Kwake received a phone call from LCOG informing him that the exception payments would not be granted and, furthermore, that payments for Campbell would be reduced by approximately 58% effective May 1, 2018.

26. Kwake requested a written explanation for the denial but was told that he was not entitled to receive one.

27. From April 2018 through March 2019, Kwake paid for the additional care needed by Campbell and received no reimbursement from Defendants.

28. After the initiation of this action, Campbell personally applied for exception payments for 7 hours of one-on-one care necessitated by his medical needs. On or about May 24, 2019, DHS orally informed Kwake that it had approved payments for 5.5 hours of care—21% less than requested.

29. DHS provided Campbell with no written explanation of the decision, and it did not inform him of any right to an administrative appeal of the denial of a portion of his application.

30. The level of care needed by Campbell has not decreased since at least 2016.

31. Defendants have not provided Campbell with an explanation for why his exception payments were first denied and then approved at a reduced rate. On information and belief, whatever reasons Defendants have for denying or reducing Campbell's exception payments would apply equally regardless whether Campbell was in Kwake's Home or another adult foster care home.

32. Given Campbell's condition and the likelihood that his condition will not improve and will instead continue to deteriorate over time, he will continue to require exceptional payments in order to have his needs met. On information and belief, there are no other



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

comparable adult foster care home providers in the Eugene area who could both (a) immediately accept Campbell as a patient and (b) provide Campbell with the level of care he requires without receiving exception payments. Therefore, if Campbell is evicted from Kwake's Home, he will be at serious risk of institutionalization, as there will be no other home for him to go to where he could receive the necessary level of care.

**FIRST CLAIM FOR RELIEF**

**(Violation of the Americans with Disabilities Act as Implemented through 28 CFR § 35.130)**

33. Plaintiff incorporates and realleges the foregoing paragraphs as though set forth here in full.

34. 28 CFR § 35.130 is the nondiscrimination rule of the ADA. It provides, among other things:

> "(b)(3)A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
>
> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
>
> (ii) That have the purpose or effect of defeating or substantially impairing the objectives of the public entity's program with respect to individuals with disabilities; or
>
> (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State."

35. The State of Oregon is a "public entity" within the meaning of 28 CFR § 35.104(1).

36. The Department of Human Services is a "public entity" within the meaning of 28 CFR § 35.104(2).



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

37. Plaintiff Campbell is a "qualified individual with a disability" within the meaning of 28 CFR § 35.104 in that he meets the eligibility requirements for the receipt of services, or the participation in programs or activities provided through Oregon's Adult Foster Care Program.

38. The DHS Rule does not authorize providers to apply for a rate exception, instead authorizing only the "consumer or consumer representative" to request an exception. OAR 411-027-0050(7)(a). The definition of "representative" expressly excludes providers. OAR 411-050-0602(70); OAR 411-050-0602(25)(a)(B).

39. One of DHS's stated purposes is to "assist[] elderly persons and persons with disabilities to assure their rights to apply for and receive services and to be given fair hearings when such services are denied." ORS 410.070(1)(i). However, the DHS Rule only requires that a notice of planned action (and the administrative appeal rights detailed in the notice) be provided by DHS when the exception request comes directly from consumers or their representatives. Providers who request rate exceptions for the consumers in their care are not entitled to a written notice explaining the decision or to any administrative appeal. OAR 411-027-0050(7)(e); OAR 411-050-0602(70); OAR 411-050-0602(25)(a)(B).

40. Campbell relies upon Kwake and the Home for all of his daily needs. He also has come to rely upon him for non-medical needs, including applying for funding for his care.

41. As described above, Campbell lacks the cognitive capacity and physical wherewithal to apply year-after-year for the exception payments that permit Kwake or any other adult foster care provider to continue caring for him, to interpret a notice of proposed action in the event of denials, and to pursue administrative appeals if denied.

42. Kwake is in a position to apply, review and appeal on behalf of all of the Home's residents including Campbell.

43. As applied to Campbell, the DHS Rule violates the ADA because it conditions meaningful administrative review upon the ability of a cognitively-impaired consumer to know and understand the exception payment process and either to submit, every year, payment exception applications, or to ensure that he designates someone every year to prepare and submit



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

the application. The practical effect of Campbell failing to do so is that funding for his extensive care is left to the whim of DHS, which need not afford any meaningful process to a provider trying to obtain the funding to keep Campbell from having to be institutionalized.

44. The DHS Rule thus has the effect of (a) subjecting Campbell to discrimination on the basis of his specific disabilities, and (b) defeating or substantially impairing accomplishments of the adult foster care program, with respect to Campbell.

45. There is an actual controversy between Plaintiff and defendants DHS, Pakseresht and Carson-Cottingham.

46. Plaintiff is entitled to a declaration that the DHS Rule violates the ADA and an injunction requiring rulemaking, supervised by this Court, allowing providers like Kwake to apply for exception payments on behalf of their consumers and requiring a notice of planned action and right to administrative appeal for such applications.

## SECOND CLAIM FOR RELIEF

**(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*)**

47. Plaintiff incorporates and realleges the foregoing paragraphs as though set forth here in full.

48. Title Two of the Americans with Disabilities Act prohibits discrimination against people with disabilities by public entities. 42 U.S.C. § 12132.

49. State agencies providing services must provide them in the most integrated setting possible. 28 CFR § 35.130(d).

50. Unnecessary confinement, isolation, or segregation of people with disabilities constitutes discrimination because it stems from an irrational belief that people with disabilities cannot or should not participate in public life and because it unreasonably restricts their liberty to participate in that public life. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999).



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

51. A state's denial of home and community based services like the care provided in adult foster homes violates the ADA's integration mandate if it creates a serious risk of institutionalization. *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th Cir. 2012).

52. The Oregon Department of Human Services, headed by Mr. Pakseresht, and the office of Aging and Peoples with Disabilities, headed by Ms. Carson-Cottingham, are public entities within the meaning of the Americans with Disabilities Act. 42 U.S.C. § 12131(1).

53. Campbell is a qualified individual with a disability within the meaning of the ADA. 42 U.S.C. § 12131(2). The most integrated possible setting appropriate for Plaintiff is an adult foster home in his community.

54. Defendants' denial of exception payments necessary for the care of Campbell violates the ADA's integration mandate by creating a serious risk that he will no longer be able to remain in the Home and will instead be institutionalized.

55. Plaintiff is entitled to receive adequate state support to prevent segregation and isolation from his community on the basis of disability.

## THIRD CLAIM FOR RELIEF

**(Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*)**

56. Plaintiff incorporates and realleges the foregoing paragraphs as though set forth here in full.

57. A recipient of Federal funds, including Medicaid funds, must not discriminate against people with disabilities. 29 U.S.C. § 794.

58. DHS and the Office of Aging and People with Disabilities each receive, handle, and disburse Federal Medicaid funds and other Federal funds.

59. The Rehabilitation Act's prohibition against discrimination is interpreted coextensively with the ADA. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended (Oct. 11, 2001 ).

60. Enabling regulations of the Rehabilitation Act, like those of the ADA, require



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

services be provided to elderly people and adults with disabilities in the "most integrated setting" appropriate to the individual. 10 CFR § 4.121(d).

61. The Rehabilitation Act similarly prohibits Defendants from limiting adult foster care services in a way that increases the risk of isolation or unnecessary placement in a more restrictive setting, just as the ADA does.

62. Defendants' denial of exception payments necessary for the care of Campbell violates the Rehabilitation Act's integration mandate by creating a serious risk that he will no longer be able to remain in the Home and will instead be institutionalized.

63. Plaintiff is entitled to receive adequate state support to prevent segregation and isolation from his community on the basis of disability.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

A. First Claim for Relief

1. For a declaratory judgment that:

a. As applied to Plaintiff, OAR 411-027-0050(7) violates the Americans with Disabilities Act as implemented through 28 CFR § 35.130(3), insofar as OAR 411-027-0050(7) does not entitle a provider to apply for rate exceptions, receive a notice of proposed action, or appeal a denial of exception payments; and

b. Defendants violated OAR 411-027-0057(7)(e) by failing to provide a notice of planned action and right to administrative appeal upon denial of the exception requests submitted by Campbell in 2019.

2. For an injunction requiring:

a. Within 60 days, DHS must initiate rulemaking pursuant to ORS Chapter 183 and OAR 137-001-0007 through 0100 and propose a new version of OAR 411-027-0050(7) that entitles providers to apply for rate exceptions and receive a notice of proposed action and a contested case hearing in the



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

event an application for exception funding is denied in whole or in part;

b. Within 14 days of the revised rule's adoption by DHS but prior to its being filed with the Oregon Secretary of State pursuant to ORS 183.355, DHS shall submit the adopted rule to the Court for its approval; and,

c. From the time of Judgment through the effective date of the revised rule, any licensed provider of adult foster care services shall be entitled to receive a notice of proposed action and contested case hearing in the event an application for exception payments is denied in whole or in part.

B. Second and Third Claims for Relief – For entry of Judgment directing Defendants to provide exception payments sufficient to (1) provide for Plaintiff's care and (2) prevent Plaintiff's eviction and institutionalization.

C. All reasonable attorney fees, litigation expenses and costs pursuant to 42 U.S.C. § 12205; and

D. For such other and further relief as the Court finds just and proper.

DATED: March 6, 2020

COSGRAVE VERGEER KESTER LLP

s/ Timothy J. Fransen

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

Attorneys for Plaintiff Daniel Campbell

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing THIRD AMENDED COMPLAINT OF PLAINTIFF DANIEL CAMPBELL to be served on the date indicated below by:

☐ mail with postage prepaid, deposited in the US mail at Portland, Oregon,

☐ hand delivery,

☐ facsimile transmission,

☐ overnight delivery,

☒ electronic filing notification.

I further certify that said copy was delivered as indicated above and addressed to said attorneys at the addresses listed below:

Christina L. Beatty-Walters
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201

Attorneys for Defendants

DATED: March 6, 2020

*s/ Timothy J. Fransen*
Timothy J. Fransen



Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019